UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-61998-SMITH/VALLE

ARTHUR IMBERMAN,

     Plaintiff,

v.

KILOLO KIJAKAZI,[1]
Acting Commissioner of the
Social Security Administration,

     Defendant.

_____/

### REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS MATTER is before the Court upon Plaintiff's Motion for Summary Judgment (ECF No. 19) and Defendant's Motion for Summary Judgment (ECF No. 20) (together, "the Motions"). U.S. District Judge Rodney Smith has referred the Motions to the undersigned for a Report and Recommendation. (ECF No. 2).

After due consideration of the record and the parties' briefs, including Defendant's Response (ECF No. 21), Plaintiff's Reply (ECF No. 22), the hearing on the Motions,[2] and being otherwise fully advised on the matter, the undesigned respectfully recommends that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and the Administrative Law Judge's Decision ("ALJ's Decision") be **AFFIRMED** for the reasons set forth below.

---

[1] Kilolo Kijakazi has been appointed Acting Commissioner of the Social Security Administration. Consequently, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted for Andrew Saul as Defendant in this case.

[2] The Court held a hearing on the Motions on December 21, 2022. (ECF Nos. 29, 30). The transcript of the proceedings is incorporated by reference (hereinafter "Hr'g Tr.").

## I.     PROCEDURAL HISTORY

In December 2017, Plaintiff applied for disability benefits and supplemental security income under the Social Security Act (the "Act"), 42 U.S.C § 401 *et seq.*, alleging a disability onset date of November 15, 2015.  (R. 94, 107, 278-91).[3]  Plaintiff's application was denied initially and again upon reconsideration.  (R. 147-53, 160-73).  Thereafter, Plaintiff requested a hearing, which was held on April 3, 2019, before ALJ Sylvia H. Alonzo.  (R. 53-93, 175-76).  Plaintiff appeared with counsel and testified at the hearing.  (R. 60-81).  On December 20, 2019, the ALJ held a supplemental hearing at which Plaintiff amended his alleged onset date to November 2, 2017.  (R. 34-43).  A Vocational Expert ("VE") testified at both the initial and supplemental hearings.  (R. 39-42, 81-92).  On December 27, 2019, the ALJ issued a decision denying Plaintiff's application and finding that Plaintiff was not disabled within the meaning of the Act.  (R. 18-28).

Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's Decision the Commissioner's "final decision."  (R. 1-6); *see Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Plaintiff now seeks judicial review of the ALJ's Decision.  (ECF No. 1); *see also* 42 U.S.C. § 405(g).  Both parties have moved for summary judgment, and the Motions are ripe for adjudication.

## II.     STANDARD OF REVIEW

Judicial review of the ALJ's Decision is limited to whether there is substantial evidence in the record as a whole to support the ALJ's finding and whether the ALJ applied the correct legal standards in making her determination.  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Carson*

---

[3] All references are to the record of the administrative proceeding, which was filed as part of the Defendant's Answer.  *See* (ECF Nos. 14, 15).

*v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) (citations omitted); *see also* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Biestek*, 139 S. Ct. at 1154 (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *Carson*, 440 F. App'x at 864 (quoting *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *accord Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (substantial evidence is "more than a scintilla, but less than a preponderance"). A court, however, "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted). Even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing 42 U.S.C. § 405(g)). Within this narrow role, however, courts do not act as automatons. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), *abrogated on other grounds by Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892 (11th Cir. 2022). Rather, they "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.* (citation omitted).

To qualify for benefits, a claimant must be disabled within the meaning of the Act. *See* 42 U.S.C. § 423 (standard for disability insurance benefits) and § 1382 (standard for supplemental security income benefits). A claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities

which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To determine eligibility, the ALJ employs a five-step sequential evaluation:

(1)     Is the person presently unemployed?
(2)     Is the person's impairment severe?
(3)     Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (the "Listings")?
(4)     Is the person unable to perform his or her former occupation?
(5)     Is the person unable to perform any other work within the economy?

20 C.F.R. §§ 404.1520(a)(4) (evaluation process for disability insurance benefits), 416.920(a)(4) (evaluation process for supplemental security income benefits).  An affirmative answer to any of the above questions leads either to the next question or, on Steps 3 and 5, to a finding of disability. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  A negative answer to any question, other than Step 3, leads to a determination of "not disabled."  *Id.*

Importantly, the burden of proof rests on the claimant through Step 4.  *Phillips v. Barnhart*, 357 F.3d 1232, 1241 n.10 (11th Cir. 2004)*, abrogated on other grounds by Jones v. Soc. Sec. Admin., Comm'r*, No. 22-10507, 2022 WL 3448090 (11th Cir. 2022).  At Step 4, the ALJ must consider: (i) the claimant's residual functional capacity ("RFC"); and (ii) the claimant's ability to return to his past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The regulations define RFC as that which an individual is still able to do despite the limitations caused by his impairments.  20 C.F.R. §§ 404.1545(a), 416.945(a).  The ALJ will "assess and make a finding about [the claimant's RFC] on all the relevant medical and other evidence" in the case. 20 C.F.R. §§ 404.1520(e), 416.920(e).  The RFC assessment is used to determine whether the claimant can return to his past relevant work under Step 4, and if so, "the ALJ will conclude that

4

the claimant is not disabled." *Phillips*, 357 F.3d at 1238 (citations omitted).  If a claimant cannot return to his past relevant work, then the ALJ proceeds to Step 5.  *Id.*

At Step 5, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Phillips*, 357 F.3d at 1239.  The ALJ must determine if there is other work available in significant numbers in the national economy that the claimant can perform. *Phillips*, 357 F.3d at 1239.  If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled.  *Id.*  Conversely, if the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled.  *Id.*  The ALJ may determine whether the claimant is able to adjust to other work in the national economy by either: (1) applying the Medical Vocational Guidelines (contained within 20 C.F.R. Part 404, Subpart P, Appendix 2); or (2) using a VE, who can opine on whether someone with the claimant's limitations can obtain employment in the national economy.  *Id.* at 1239-40.

### III.   THE ALJ'S DECISION

On December 27, 2019, after reviewing the evidence and conducting the sequential analysis, the ALJ concluded that Plaintiff "has not been under a disability within the meaning of the [Act] from November 5, 2015, through the date of this decision."  (R. 19, 27).

At Step 1, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since November 5, 2015, the original alleged onset date.[4]  (R. 20).

At Step 2, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus, degenerative disc disease, hypertension, and visual impairment.  *Id.*

---

[4] Neither party objects to the ALJ's reference to the initial alleged onset date.  In any event, the ALJ's use of the original 2015 alleged onset date (and not the November 2017 onset date) is immaterial to this Report and Recommendation.

At Step 3, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any one of the Listings.  (R. 21).

At Step 4, the ALJ determined that Plaintiff has the RFC to perform a reduced range of medium work, with various exertional and non-exertional limitations.  *Id.*  In relevant part, the ALJ found that Plaintiff could perform job tasks that do not require: (i) precise near acuity like threading a needle or reading small print (defined as less than 14-point size); and (ii) peripheral vision on the right side.  *Id.*  Plaintiff also has sufficient visual acuity to work with large objects.  *Id.*

Based on this RFC, the ALJ concluded that Plaintiff was not able to perform any of his past relevant work as a security guard.  (R. 26).  The ALJ thus proceeded to Step 5 of the sequential analysis and found that Plaintiff could perform other jobs in the national economy, such as a counter supply worker, patient transporter, and hospital cleaner, all unskilled jobs with a medium exertional level and an SVP of 2.  (R. 27).  Thus, the ALJ concluded that Plaintiff is not disabled. (R. 28).

## IV.   <u>DISCUSSION</u>

Plaintiff argues that the ALJ failed to fully and fairly develop the record regarding whether Plaintiff's visual impairment met or equaled a Listing.[5]  (ECF Nos. 19 at 4-7, 26 at 1).  More specifically, Plaintiff asserts that the ALJ should have had an ophthalmologist review Plaintiff's medical history to determine if Plaintiff's visual impairment met or medically equaled a listed impairment.  (ECF No. 19 at 4-7, 26 at 1-2).  For the reasons  discussed below, the undersigned

---

[5] In the Joint Status Report, Plaintiff withdrew a second argument regarding the ALJ's evaluation of the opinion of Dr. Zorman.  (ECF No. 26 at 1).  Accordingly, only one issue remains on appeal. *Id.*; *see also* Hr'g Tr. 4:2-14 (confirming that only issue is whether the ALJ fully and fairly developed the record regarding Plaintiff's visual impairment).

finds that the ALJ applied the proper legal standards and that the ALJ's Decision is supported by substantial evidence.  Accordingly, the ALJ's Decision should be affirmed.

### A.  The ALJ Satisfied Her Duty to Develop a Full and Fair Record

An ALJ "has a basic obligation to develop a full and fair record."  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Nonetheless, there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded for further development of the record.  *Graham*, 129 F.3d at 1423; *see Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (indicating remand is necessary only where "the record reveals evidentiary gaps which result in unfairness or 'clear prejudice'") (quoting *Ware v. Schweiker*, 651 F.2d 408, 413 (5th Cir. Unit A July 1981)).[6]  Moreover, an ALJ is not required to obtain medical expert testimony when the record contains sufficient evidence for the ALJ to make an informed decision.  *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (holding ALJ was not obligated to seek independent, additional expert medical testimony because the record, which included the opinions of several physicians, was sufficient for ALJ to arrive at a decision and additional expert testimony was not necessary).

Ultimately, a claimant bears the burden of proving that he is disabled and is responsible for producing evidence in support of his claim.  *Ellison*, 355 F.3d at 1276; *see also* 20 C.F.R. §§ 404.1512(a)(1), 416.912(a)(1) (a claimant must furnish medical and other evidence that the Commissioner can use to reach conclusions about his medical impairment(s)); 20 C.F.R. §§§ 404.1512(a)(2), 416.912(a)(2) (a claimant must provide medical evidence showing that he has

---

[6] Pursuant to *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

an impairment(s) and how severe they are).  In evaluating whether a case should be remanded for an ALJ's purported failure to fully develop the record, courts consider whether there are evidentiary gaps in the record that result in unfairness or "clear prejudice" to the claimant.  *Brown*, 44 F.3d at 935; *see Graham*, 129 F.3d at 1423.

Here, after the initial hearing before the ALJ, Plaintiff requested a supplemental hearing at which an ophthalmologist could review Plaintiff's medical impairments and opine on Plaintiff's RFC.  (R. 356).  Although the ALJ held a supplemental hearing, no medical expert testified.  Rather, the supplemental hearing focused on Plaintiff's RFC determination and hypotheticals to the VE.  (R. 36-44).  Presently, Plaintiff argues that the ALJ erred in failing to call an ophthalmologist.  The undersigned disagrees.

Having reviewed the medical evidence, the undersigned finds that the record was sufficient for the ALJ to make an informed decision regarding Plaintiff's visual impairment without needing additional medical expert opinion.  For example, the record contained: (i) an April 2018 consultative examination by ophthalmologist Dr. Proctor (R. 423-28) (Ex. 6F); (ii) an April 2018 consultative physical examination by Dr. Fernandez that included an eye examination (R. 376-78) (Ex. 3F); (iii) treatment notes from 2018 and 2019 from Plaintiff's ophthalmologist Dr. Wolfe and other eye specialists (R. 371-75) (Ex. 2F), (R. 604-13) (Ex. 15F), (R. 726-29) (Ex. 18F); (iv) the December 13, 2019 opinion of Dr. Wolfe in a Vision Impairment Medical Source Statement (R. 730-32) (Ex. 19F); (v) the prior administrative findings of state agency medical consultants (R. 108-19) (Ex. 4A), (R. 134-45) (Ex. 8A); and (vi) Plaintiff's testimony at the initial hearing regarding his visual impairment and lack of surgical options (R. 65-74).  The ALJ's Decision accurately summarized the evidence regarding Plaintiff's visual impairment.  (R. 23-26).  Having the benefit of all this evidence,  the ALJ was not required to obtain additional expert testimony.

*See, e.g., Taylor on Behalf of Est. of Taylor v. Berryhill*, No. 17-CV-61402, 2018 WL 5098961, at *11 (S.D. Fla. Aug. 10, 2018), *report and recommendation adopted sub nom. Taylor v. Soc. Sec. Admin.*, 2018 WL 4690793 (S.D. Fla. Oct. 1, 2018) (noting that ALJ is not required to seek expert testimony when record contains opinions from several physicians with sufficient evidence for ALJ to make an informed decision); *cf. Guerrier on behalf of L.C. v. Saul*, No. 18-CV-63090, 2020 WL 1034371, at *7 (S.D. Fla. Feb. 14, 2020) (concluding that evidentiary gap required remand for additional testing to determine if claimant met listing), *report and recommendation adopted sub nom. Guerrier on behalf of L.C. v. Acting Comm'r of Soc. Sec.*, 2020 WL 1033405 (S.D. Fla. Mar. 2, 2020).

In sum, although the ALJ has a basic duty to develop a full and fair record, it is Plaintiff who bears the burden of proving that he is disabled and producing evidence to support his claim. *Ellison*, 355 F.3d at 1276 (citations omitted).  Here, Plaintiff has failed to establish any evidentiary gap in the record that resulted in unfairness or clear prejudice to Plaintiff.  *See, e.g.*, *Moye v. Saul*, No. 19-CV-60332, 2020 WL 1433280, at *10 (S.D. Fla. Mar. 24, 2020) (concluding that plaintiff failed to show prejudice by absence of records or explain how these might have affected the ALJ's decision); *see also Bryan v. Saul*, No. 19-CV-63164, 2021 WL 707594, at *11 (S.D. Fla. Feb. 6, 2021) (noting that mere speculation that further development of the record might produce evidence favorable to Plaintiff is not enough), *report and recommendation adopted*, 2021 WL 705776 (S.D. Fla. Feb. 23, 2021); *Espaillat v. Saul*, No. 19-CV-61703, 2020 WL 6808806, at *17-19 (S.D. Fla. July 20, 2020), *report and recommendation adopted*, 2020 WL 5087030 (S.D. Fla. Aug. 28, 2020) (denying claimant's motion for remand where there were no evidentiary gaps and ALJ satisfied duty to develop full and fair record).  Accordingly, the undersigned finds that the ALJ satisfied her duty to develop a full and fair record regarding Plaintiff's visual impairments.

**B.  The ALJ Properly Determined that Plaintiff Did Not Meet or Equal a Listing**

Next, the undersigned must determine whether the ALJ erred in finding that Plaintiff's visual impairment did not meet or equal a Listing.[7]

In relevant part, at Step 3 of the sequential evaluation, the ALJ must determine whether the claimant has an impairment(s) that meets or medically equals an impairment in the Listings. 20 C.F.R. §§ 404.1520(d), 416.920(d).  The Listings specify certain physical and mental impairments that are considered "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. §§ 404.1525(a), 416.925(a).  The Listings serve to "streamline[] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background."  *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987).

A claimant bears the burden of proving that his impairments meet or equal a Listing. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir.1991). To "meet" a Listing, the claimant must provide medical evidence documenting that his impairments meet the specific criteria of the Listing and its duration requirement.[8]  20 C.F.R. §§ 404.1525(c), 416.925(c).  To "equal" a Listing, the medical findings must be "at least equal in severity and duration to the criteria" of a Listing.

---

[7] The parties disagree on whether Plaintiff has abandoned his Listings challenge.  *Compare* (ECF No. 20 at 9 n.6) (Commissioner asserts that Plaintiff has abandoned the issue), *with* (ECF No. 22 at 2-3) (Plaintiff argues that he specifically discussed the requirements of Listing 2.02).  The undersigned finds that Plaintiff has sufficiently raised the argument regarding the Listings in his appeal and more directly during the hearing before the undersigned.  *See, e.g.*, (ECF No. 19 at 6), Hr'g Tr. 7:6-9:5.  Accordingly, the issue has not been waived and is addressed herein.

[8] Most of the impairments in the Listings are "permanent or expected to result in death."  20 C.F.R. §§ 404.525(c)(4), 416.925(c)(4).  Some specify their own duration requirement.  *Id.*  "For all others, the evidence must show that [the] impairment(s) has lasted or can be expected to last for a continuous period of at least 12 months."  *Id.*

20 C.F.R. §§ 404.1526(a), 416.926(a).  If the claimant's impairments meet or equal a Listing, the claimant will be found disabled.  20 C.F.R. §§ 404.1520(d), 416.920(d).

Here, Plaintiff initially argued that a medical expert could have determined whether his visual impairment met or equaled a Listing.  *See* (ECF No. 19 at 7).  However, at the hearing before the undersigned, Plaintiff conceded that Plaintiff did not *meet* the requirements of Listing 2.02.[9] Hr'g Tr. 12:16-13:3, 21:1-5.  Therefore, Plaintiff's remaining argument is that a medical expert was necessary for the ALJ to determine whether Plaintiff's visual impairment equals Listing 2.02. *Id.*  For the reasons set forth below, Plaintiff's argument is unpersuasive.

Here, the ALJ clearly considered whether Plaintiff met or equaled the requirements of Listing 2.02 (loss of central visual acuity).  (R. 21).   In relevant part, pursuant to Listing 2.02(A)(2)(a), blindness is defined as central visual acuity of 20/200 or less in the better eye with the use of correcting lens.  This determination uses the "best corrected" central visual acuity for distance in the better eye.  Based on a consultative examination report, the ALJ found that Plaintiff's nearsighted vision was 20/200  bilaterally, and farsighted vision was 20/200 in the right eye and 20/70 in the left eye.  (R. 21); *see also* (R. 423) (Ex. 6F) (reflecting best corrected vision). The ALJ then concluded that Plaintiff's impairments neither met nor equaled Listing 2.02.  (R. 21). As further discussed below, the ALJ's determination is supported by substantial evidence.

First, in challenging the ALJ's conclusion regarding the Listings, Plaintiff erroneously argues that the ALJ "overlooked" Dr. Wolfe's December 2019 examination of Plaintiff.

---

[9] Although the ALJ also discusses Listing 2.04 in her Decision and Plaintiff mentioned several Listings during the hearing before the undersigned, the crux of Plaintiff's appeal focuses on Listing 2.02 (loss of central visual acuity).  *See* (ECF No.19 at 6), Hr'g Tr. 5:22-6:16 (Plaintiff's argument before the undersigned that ALJ considered only Listing 2.02); 29:1-5 (Commissioner's argument that only Listing at issue is 2.02).

(ECF No. 19 at 5-6). A review of the ALJ's Decision, however, confirms that the ALJ considered Dr. Wolfe's ophthalmological records and opinion in Exhibits 18F and 19F. (R. 24, 25-26).

Next, Plaintiff argues that because of the technicality of the Listings, the ALJ was not qualified to evaluate whether Plaintiff's visual impairment equals the Listings. Hr'g Tr. 17:17-23. Pursuant to the regulations, however, the responsibility of deciding whether an impairment equals a Listing rests with the ALJ. 20 C.F.R. §§ 404.1526(e)(3), 416.926(e)(3). Moreover, the revised regulations (applicable to claims filed after March 27, 2017) further provide that statements about whether a claimant meets or equals a Listing are neither valuable nor persuasive to the issue of whether a claimant is disabled and an ALJ need not provide any analysis of how she considered such evidence in her Decision. 20 C.F.R. §§ 404.1520b(c)(3)(iv), 416.920b(c)(3)(iv); *see also Lasauna H. v. Kijakazi*, No. 21-CV-00356-VMC, 2022 WL 17541770, at *2 (N.D. Ga. Sept. 22, 2022) (affirming ALJ's assessment where law provides that treating physician's opinion on an issue reserved for the Commissioner is "neither valuable nor persuasive to the issue of whether an applicant is disabled."). Thus, Plaintiff's argument that the ALJ cannot determine medical equivalency is misplaced.

The ALJ is also not required to "mechanically recite the evidence leading to her [Listings] determination." *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) (ALJ's implicit finding that claimant did not meet a Listing was clear where ALJ considered relevant law and evidence). Moreover, to meet a Listing, a claimant must have a diagnosis specified in the Listings and must provide medical reports documenting that claimant's conditions meet the specific severity criteria of the Listings and the duration requirement. 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3); *Moye*, 2020 WL 1433280, at *11. An impairment that meets only some of the Listing requirements, no matter how severe, does not qualify. *Moye*, 2020 WL 1433280, at *11 (citation omitted). Here,

the evidence showed that Plaintiff's best corrected visual acuity for distance was 20/70 in his left eye—far better than the required 20/200 in both eyes.  (R. 423).  Thus, Plaintiff's argument that perhaps a medical expert would have determined that his visual impairment equaled a Listing is meritless.

Lastly, the ALJ's determination that Plaintiff's visual impairment does not meet or equal Listing 2.02 is supported by substantial evidence.  For example, March 2018 treatment notes from Dr. Cohen (who works with Dr. Wolfe) reflect Plaintiff's distance visual acuity of 20/60 in the right eye and 20/80 in the left eye, with correction.  (R. 610); *see also* (R. 112-13, 138, 142) (State Agency summary of Plaintiff's ophthalmological records).   In an April 2018 consultative examination by Dr. Fernandez, Plaintiff's visual acuity was 20/200 in the right eye and 20/80 in the left eye, with correction.  (R. 376); Hr'g Tr. 24:2-25:9.  In another April 2018 consultative examination by Dr. Proctor, Plaintiff's distance visual acuity was 20/200 in the right eye and 20/70 in the left eye, with correction.  (R. 423); Hr'g Tr. 25:10-26:14.  Subsequently, in a July 2019 visit with Dr. Cohen, Plaintiff's visual acuity was 20/200 in both eyes, without corrective lenses.  (R. 605).   Thereafter, in December 2019 (contemporaneous with the ALJ's Decision), the treatment notes and Medical Source Statement of Dr. Wolfe reflect that Plaintiff's visual acuity in both eyes was 20/100, with correction.[10]  (R. 730).  Based on this record, substantial evidence supports the ALJ's conclusion that Plaintiff's visual impairment did not meet or equal Listing 2.02, which required a far sighted visual acuity of 20/200 in both eyes, with correction.

In short, the undersigned concludes that substantial evidence supports the ALJ's Decision.  Moreover, the ALJ fairly and fully developed the record without the need for medical expert

---

[10] Dr. Wolfe's treatment notes of December 9, 2019 reflect visual acuity of 20/200 in both eyes, but this measurement is without corrective lenses.  (R. 727).

testimony, and she applied the proper legal standards. Accordingly, the ALJ's Decision should be affirmed.

## V.   <u>RECOMMENDATION</u>

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF No. 19) be **DENIED,** that Defendant's Motion for Summary Judgment (ECF No. 20) be **GRANTED**, and that the ALJ's Decision be **AFFIRMED**.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this District. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2022); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** at Chambers, in Fort Lauderdale, Florida on January 31, 2023.

ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Rodney Smith
    All Counsel of Record